IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| DAMARCUS LEE NICHOLSON, | ) | Case No. 5:18 cv 379 |
| | ) | |
| Petitioner, | ) | JUDGE DAN AARON POLSTER |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | THOMAS M. PARKER |
| DAVID GRAY, WARDEN, | ) | |
| | ) | |
| Respondent. | ) | **REPORT & RECOMMENDATION** |
| | ) | |

## I.     Introduction

Petitioner, Damarcus Lee Nicholson, seeks a writ of habeas corpus under 28 U.S.C. § 2254, claiming that his conviction and sentence in *State v. Nicholson,* Case No. 2016 CR 1465A, (Stark County, Ohio Court of Common Pleas), as affirmed in *State v. Nicholson*, Fifth Dist. Stark No. 2016 CA 00210, 2017-Ohio-2825, 2017 Ohio App. LEXIS 1856, violated his constitutional rights.  ECF Doc. 1.  Respondent Warden, David W. Gray, has filed a return of writ.  ECF Doc. 8.  Nicholson filed a traverse, which he entitled "motion for federal relief pursuant to U.S.C. § 2254(D)" on May 21, 2018.  ECF Doc. 10.  Warden Gray filed a response to Nicholson's motion on May 29, 2018.  ECF Doc. 11.

On September 30, 2016, a jury found Nicholson guilty of trafficking in heroin, possession of heroin, aggravated trafficking in drugs and aggravated possession of drugs.  ECF Doc. 8-1 at 36.  On October 11, 2016, after merging three of Nicholson's charges, the trial court ordered him to serve an eight-year prison term for trafficking in heroin and a 12-month term for aggravated

possession of drugs, to be served concurrently. ECF Doc. 8-1 at 46. Nicholson is currently

incarcerated at the Belmont Correctional Institution.[1]

The matter is before me by this Court's February 27, 2018 order of reference and Local

Rule 72.2 for preparation of a report and recommendation on Nicholson's petition. Because

Nicholson's Ground One claim lacks merit and his Ground Two claim has been procedurally

defaulted, I recommend that the Court DISMISS Nicholson's claims for relief and DENY his

petition for writ of habeas corpus.

## II. Procedural History

### A. State Trial Court Conviction

On August 10, 2016, a Stark County, Ohio grand jury indicted Nicholson with one count

of trafficking in heroin in violation of Ohio Rev. Code § 2925.03(A)(2)(C)(6)(e), one count of

possession of heroin in violation of Ohio Rev. Code § 2925.11(A)(C)(6)(d), one count of

aggravated trafficking in drugs in violation of Ohio Rev. Code § 2925.03(A)(2)(C)(1)(a), and

one count of aggravated possession of drugs in violation of Ohio Rev. Code §

2925.11(A)(C)(1)(a). ECF Doc. 8-1 at 5.

Before trial, Nicholson moved to suppress the evidence obtained from a warrantless

search of the rental car he was driving. ECF Doc. 8-1 at 8. After a hearing, the trial court

determined that Nicholson did not have standing to object to the search of the vehicle because he

didn't own or lease the car; he was not listed as an authorized driver on the rental agreement;

and, because he didn't have a valid driver's license, he could not have been an authorized driver

of the car. ECF Doc. 8-1 at 32-33.

---

[1] https://appgateway.drc.ohio.gov/OffenderSearch/Search/Details/A690871 (last visited 9/12/19).

The trial court declared a mistrial at Nicholson's first trial because an officer's testimony violated an *in limine* order.  ECF Doc. 8-3 at 4-5.  The second trial commenced on September 29, 2016.  ECF Doc. 8-3 at 1.  On September 30, 2016, the jury found Nicholson guilty on all charges.  ECF Doc. 8-1 at 36.  The trial court found that Counts One, Two and Three were of similar import and merged them before sentencing.  ECF Doc. 8-1 at 46.  On October 11, 2016, the trial court sentenced Nicholson to serve an eight-year prison term for trafficking in heroin and a 12-month term prison for aggravated possession of drugs.  These terms were ordered to be served concurrently for an aggregate sentence of eight years.  ECF Doc. 8-1 at 46.

### B.    Direct Appeal

Through new counsel, Nicholson filed a notice of appeal on November 10, 2016.  ECF Doc. 8-1 at 49.  In his appellate brief, Nicholson raised a single assignment of error:

> I.  The trial court committed reversible error when it overruled the defendant's motion to suppress.

ECF Doc. 8-1 at 57.  The Ohio Court of Appeals agreed with the trial court that Nicholson lacked standing to challenge the warrantless search of the vehicle he was driving and affirmed the trial court's judgment on May 15, 2017.  ECF Doc. 8-1 at 110, *State v. Nicholson*, Fifth Dist. Stark No. 2016 CA 00210, 2017-Ohio-2825, 2017 Ohio App. LEXIS 1856.

On June 16, 2017, Nicholson filed a *pro se* notice of appeal with the Ohio Supreme Court.  ECF Doc. 8-1 at 120.  In his memorandum in support of jurisdiction, Nicholson asserted one proposition of law:

> **Proposition of Law No. I:**
> Did the Fifth Appellant District Err[] by allowing the trial court to impermissibl[y] exceed the scope of the suppression hearing.

ECF Doc. 8-1 at 123.  On September 27, 2017, the Ohio Supreme Court declined jurisdiction.

ECF Doc. 8-1 at 151.  *State v. Nicholson,* 150 Ohio St.3d 1913, 2017-Ohio-7843, 82 N.E.3d

1177.

### C.    Post-Conviction Motion for Mistrial Transcript

Two weeks before the Ohio Court of Appeals affirmed Nicholson's convictions on direct

appeal, on April 28, 2017, Nicholson filed a *pro se* motion requesting the transcript from the day

the trial court declared a mistrial.  Nicholson represented that the transcript was "needed for the

furtherance of petitioner[']s direct appeal," and he asserted that his appellate attorney had not

responded to his request for the transcript.  ECF Doc. 8-1 at 152.  The trial court denied his

motion.  ECF Doc. 8-1 at 154.

On May 18, 2017, Nicholson filed a *pro se* appeal with the Ohio Court of Appeals (ECF

Doc. 8-1 at 155) raising the following assignment of error:

> I.    The trial court erred in its decision to deny appellant's motion for mistrial
> transcripts.

ECF Doc. 8-1 at 162.  The state filed a responsive brief.  ECF Doc. 8-1 at 166.  Nicholson filed a

rebuttal brief.  ECF Doc. 8-1 at 177.  On August 21, 2017, the Ohio Court of Appeals affirmed

the judgment of the trial court.  ECF Doc. 8-1 at 182.  The Ohio Court of appeals recognized that

the State must provide a transcript of prior proceedings when an indigent defendant needs it for

an effective defense or appeal.  *State v. Arrington,* 42 Ohio St.2d 114 (1975).  However, the

court also found that Nicholson did not need the mistrial transcript for an effective appeal

because, by the time he requested the transcript, his appeal had already been fully briefed and

heard on oral argument[2]; his appeal only raised issues related to the denial of his motion to

---

[2] The finding that the request came after oral argument appears to be erroneous because the record reflects
that oral argument was waived.  ECF Doc. 8-1 at 310.

suppress; and  Nicholson had not requested a transcript of the mistrial during the second trial.

ECF Doc. 8-1 at 185.  Nicholson did not appeal this decision to the Ohio Supreme Court.

### D.      Ohio App. R. 26(B) Application to Reopen Direct Appeal

On June 12, 2017, Nicholson filed a *pro se* application to reopen his direct appeal.  ECF

Doc. 8-1 at 187.  Nicholson argued that his appellate counsel was ineffective for failing to raise

the following assignments of error:

I.      Appellate counsel was ineffective for failing to raise the issue of the trial court abusing its discretion in admitting text messages that were unfairly prejudicial.  ECF Doc. 8-1 at 190.

II.     Appellate counsel was ineffective for failing to raise the issue of trial counsel's failure to object to the text messages and Exhibit 26.  ECF Doc. 8-1 at 193.

III.    Appellate counsel was ineffective for failing to order the mistrial transcripts as it was needed for Nicholson's direct appeal.  ECF Doc. 8-1 at 194.

The State opposed Nicholson's application to reopen.  ECF Doc. 8-1 at 238.  On July 26, 2017,

the Ohio Court of Appeals denied the application, finding "no genuine issues existed" as to

whether Nicholson was denied effective assistance of counsel on appeal.  ECF Doc. 8-1 at 248.

On August 16, 2017, Nicholson filed a *pro se* notice of appeal with the Ohio Supreme

Court.  ECF Doc. 1 at 249.  Nicholson's memorandum in support of jurisdiction asserted the

following propositions of law:

**Proposition of Law No. I:**
Appellate Counsel is ineffective when he fails to raise issues that offend the Confrontation Clause and instead raises a claim that is clearly non meritorious having no reasonable probability of success on a defendant's appeal?

**Sub Proposition of Law I(A):**
Did the text messages violate hearsay rule 801C and the Confrontation Clause of the 6th Amendment of the United States Constitution?

**Sub Proposition of Law (IB):**

Did the translation of authenticated text messages by Detective Bays violate *Crawford v. Washington*?

**Sub Proposition of Law (IC):**
Did the trial court abuse its discretion in allowing Exhibit (28) to be entered into evidence, as it was unauthenticated and violated Rule 901?

**Sub Proposition of Law (ID):**
Did the court's erroneous admission of the text messages violate Evidence Rule 403?

ECF Doc. 8-1 at 252.  The State filed a memorandum in response.  ECF Doc. 8-1 at 270.

Nicholson amended his memorandum in support of jurisdiction to include an additional

proposition of law:

**Proposition of Law II:**
Was appellate counsel ineffective for failing to order the mistrial transcripts as it was needed for Nicholson's direct appeal?

ECF Doc. 8-1 at 285.  On June 21, 2017, the Ohio Supreme Court declined jurisdiction.  ECF

Doc. 8-1 at 305.

### E.    Federal Habeas Corpus Petition

Applying the prison mailbox rule, Nicholson is deemed to have filed his *pro se* petition

for writ of habeas corpus in this court on February 9, 2018.  ECF Doc. 1 at 15.  Nicholson now

raises two grounds for relief:

**GROUND 1:**
INEFFECTIVE ASSISTANCE OF APPELLATE COUNSEL.

**Supporting Facts:**  The Fifth Appellate District unreasonably applied *Smith v. Robbins* and *Strickland v. Washington* to the facts of petitioner's case.  The fifth appellate district specifically failed to assess the strength of the underlying claims. Within the underlying claims, petitioner complained that the entry of the text messages, violated protocol sat down by the United States Supreme Court's ruling in *Crawford v Washington.*  Petitioner's claims under the umbrella of his 26B were clearly stronger than the issues raised in his district appeal.  Appellate counsel was also ineffective in failing to order the transcripts of the prior mistrial. ECF Doc. 1 at 5.

6

**GROUND 2:**
PETITIONER'S RIGHTS TO AN EFFECTIVE APPEAL WAS [sic] DENIED
DUE TO THE TRIAL COURT'S DENIAL OF HIS MISTRIAL
TRANSCRIPTS.
**Supporting Facts:**  The court of appeals unreasonably applied *Britt v. North
Carolina* in failing to give petitioner his mistrial transcripts, in which he needed to
address issues that should have been raised in indirect appeal specifically the trial
court allowing the same evidence, which caused his mistrial, into his trial causing
his trial to be fundamentally unfair.  ECF Doc 1 at 7.

Warden Gray filed a return of writ and the state court record on April 26, 2017.  ECF Doc. 8.

Nicholson filed a traverse which he entitled "motion for federal relief pursuant to U.S.C.S.

2254(D)" on May 21, 2018.  ECF Doc. 10.  Warden Gray filed a response on May 29, 2018.

ECF Doc. 11.  The matter is ripe for disposition.

## III.  Facts

The analysis of Nicholson's petition begins with the "Statement of the Facts" from the

Ohio Court of Appeals opinion:

> {¶ 5}   On September 6, 2016, a hearing was held on Appellant's motion
> to suppress.  At the suppression hearing, the state presented the testimony
> of Officer Joseph Bays and admitted three exhibits, the LEADs printout of
> Appellant's driving status, the LEADs printout for the Jeep Appellant was
> driving, and the Rental Agreement for the Jeep.
>
> {¶ 6}   Officer Bays is a Canton Police officer working with the special
> investigation unit.  (Supp. T. at 6).  Officer Bays testified that the unit had
> received a tip that Appellant and Kristen Butcher were selling heroin.
> Based upon this information an investigation was initiated.  (Supp. T. at
> 6).  In the beginning of the investigation, Officer Bays learned that
> Butcher had an active arrest warrant and Appellant's driving privileges
> were under multiple FRA suspensions. (Supp. T. at 9-10).  Officer Bays
> testified that Appellant has actually never had a valid driver's license.
> (Supp. T. at 11).
>
> {¶ 7}   Officer Bays testified that he and other officers set up a
> surveillance of an orange Jeep Renegade they had been advised was being
> driven by Appellant.  (Supp. T. at 8-9).  The officers observed Appellant
> driving the Jeep and ran the license plate number.  The plate established
> that the owner of the vehicle was EAN Holding LLC, a rental car
> company.  (Supp. T. at 12).  Officer Bays then pulled Appellant over for

7

driving under an FRA suspension. Officers immediately arrested the passenger, Kristen Butcher, on the outstanding warrants.

{¶ 8} At the scene, Officer Bays determined that neither Appellant nor Butcher could drive the vehicle away from the place where the vehicle had been stopped. In addition, Officer Bays testified that the vehicle was parked in a rough neighborhood and that under the circumstances, the Canton City Police Department policy required that the vehicle be inventoried and impounded for the safekeeping. (Supp. T. at 14-16).

{¶ 9} Officer Bays called the Canton PD for impound and inventoried the vehicle. (Supp. T. at 16). During the inventory, Officer Bays found the rental agreement entered into between Enterprise Rental Car Company and Latonia Billings, who is Appellant's mother. Appellant was not an authorized user on the agreement. Furthermore, Latonia Billings was not authorized to permit anyone else to drive the vehicle. In the center console, Officer Bays found a yellow Crown Royal bag containing a digital scale, small plastic baggies, and an aspirin bottle containing two bags of a grey substance.

{¶ 10} At trial Jay Spencer from the Stark County crime lab testified that the digital scale tested positive for traces of Fentanyl. Spencer also testified that the baggies contained heroin mixtures in the amounts of 5.99 grams and 13.52 grams.

{¶ 11} On cross-examination, Officer Bays admitted that the traffic citation served on Appellant after the traffic stop incorrectly stated that Appellant was pulled over for driving under a suspension for non-payment of child support. Bays testified that although the citation was incorrect, the stop had been based on Appellant driving under multiple FRA suspensions.

*State v. Nicholson*, *supra,* 2017-Ohio-2825 at ¶¶ 5-11. In a habeas corpus proceeding, factual determinations made by state courts are presumed correct unless the petitioner rebuts them by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); see also *Franklin v. Bradshaw*, 695 F.3d 439, 447 (6th Cir. 2012); *Montgomery v. Bobby*, 654 F.3d 668, 701 (6th Cir. 2011).

## IV.    Legal Standard - AEDPA

A state habeas prisoner's claims for habeas corpus relief are governed by the Antiterrorism and Effective Death Penalty Act, *Pub. L. 104-132, 110 Stat. 1214* ("AEDPA").

AEDPA established a standard of review that gives significant deference to the decisions made by the state courts on the constitutional issues raised in a habeas corpus petition.[3]  *See Penry v. Johnson*, 532 U.S. 782, 791, 121 S. Ct. 1910, 150 L. Ed. 2d 9 (2001); *Wilson v. Parker*, 515 F.3d 682, 691 (6th Cir.2008).  AEDPA imposes a "highly deferential standard for evaluating state-court rulings," *Lindh v. Murphy*, 521 U.S. 320, 333, n. 7, 117 S. Ct. 2059, 138 L. Ed. 2d 481 (1997), and "demands that state-court decisions be given the benefit of the doubt," *Woodford v. Visciotti*, 537 U.S. 19, 24, 123 S. Ct. 357, 154 L. Ed. 2d 279,(2002) (per curiam).

When the claim presented in a habeas corpus petition ***has*** been presented to and decided on the merits by the state courts, a federal habeas court may not grant relief unless the state court's decision was contrary to or an unreasonable application of clearly established federal law or was based on an unreasonable determination of the facts in light of the evidence that was presented. 28 U.S.C. § 2254(d) provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim-
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

In applying this statute, the Supreme Court has held that" [t]he focus . . . is on whether the state court's application of clearly established federal law is objectively unreasonable . . . an

---

[3] Petitions for habeas corpus relief under AEDPA are governed by the statute of limitations set forth in 28 U.S.C. § 2254.  A review of Nicholson's state court record reveals his petition was timely filed.  Because respondent raises no timeliness issue, I find it unnecessary to set forth a statute of limitations analysis in this report.

unreasonable application is different from an incorrect one."  To obtain habeas corpus relief, a

petitioner must show the state court's decision was "so lacking in justification that there was an

error well understood and comprehended in existing law beyond any possibility for fairminded

disagreement."  *Bobby v. Dixon*, 565 U.S. 23, 24, 132 S. Ct. 26, 181 L. Ed. 2d 328 (2011),

quoting *Harrington v. Richter*, 562 U.S. 86, 103, 131 S. Ct. 770, 178 L. Ed. 2d 624 (2011).  This

bar is "difficult to meet" because "habeas corpus is a 'guard against extreme malfunctions in the

state criminal justice systems,' not a substitute for ordinary error correction through appeal."

*Harrington v. Richter*, 562 U.S. at 102-103 (quoting *Jackson v. Virginia*, 443 U.S. 307, 332, n.

50, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979) (Stevens, J., concurring in judgment)).  In short,"[a]

state court's determination that a claim lacks merit precludes federal habeas relief so long as

'fairminded jurists could disagree' on the correctness of the state court's decision." *Id.*, quoting

*Yarborough v. Alvarado*, 541 U.S. 652, 664, 124 S. Ct. 2140, 158 L. Ed. 2d 938 (2004). "The

question under AEDPA is not whether a federal court believes the state court's determination

was incorrect but whether that determination was unreasonable – a substantially higher

threshold." *Schriro v. Landrigan*, 550 U.S. 465, 473, 127 S.Ct. 1933, 167 L.Ed.2d 836 (2007).

V.     **Discussion**

        A.     **Ground One**

                1.     **Standard of Review**

        Nicholson's Ground One claim asserts that his appellate counsel was ineffective because:

1) he failed to argue that the admission of text messages was a violation of Nicholson's

Confrontation Clause rights as explained in *Crawford v. Washington,* 541 U.S. 36, 124 S. Ct.

1354, 158 L. Ed. 2d 177 (2004); 2) that the issues that Nicholson raised in his 26(B) application

to reopen were "clearly stronger" than the issues raised on direct appeal; and 3) that appellate counsel was ineffective for failing to order the mistrial transcripts. ECF Doc. 1 at 5.

Nicholson raised his Ground One claim in state court in his 26(B) application to reopen. The Ohio Court of Appeals noted that, under Ohio's Appellate Rule 26(B), applicants bear the burden to establish that there was a "genuine issue" as to whether there is a "colorable claim" of ineffective assistance of counsel on appeal. ECF Doc. 8-1 at 247; *State v. Smith,* 95 Ohio St. 3d 127, 766 N.E.2d 588, 2002-Ohio-1753. The court correctly noted that the standard for determining an ineffective assistance of counsel claim comes from *Strickland v. Washington,* 466 U.S. 668, 687, 104 S. Ct. 2052, 2064, 80 L. Ed. 2d 674 (1984). The court then summarily concluded that Nicholson's arguments regarding appellant counsel were unpersuasive and that he had not met his burden of establishing a genuine issue as to whether he was denied effective assistance of counsel on appeal. ECF Doc. 8-1 at 248.

Because the Ohio Court of Appeals summarily rejected his arguments, Nicholson argues that this Court should apply a *de novo* standard of review. Nicholson cites *Hill v. Mitchell,* 400 F.3d 308, 313 (6th Cir. 2005) for the proposition that, when a state court does not consider the merits of a claim, the federal court may review the claim *de novo* rather than through the deferential lens of AEDPA. In *Hill,* the Ohio Court of Appeals had incorrectly determined that appellant's ineffective assistance of counsel claim was barred by *res judicata.* Because the state court erred in applying a procedural bar to appellant's claim, the federal courts reviewed the claim *de novo. Id.; see also, Greer v. Mitchell,* 264 F.3d 663, 675 (6th Cir. 2001) (concluding that "when the record reveals that the state court's reliance upon its own rule of procedural default is misplaced, we are reluctant to conclude categorically that federal habeas review of the purportedly defaulted claim is precluded".)

11

Here, the Ohio Court of Appeals did not err in applying a procedural bar.  Rather, it summarily rejected Nicholson's arguments on the merits with little stated analysis.  In such a circumstance, this court does not review the state court's decision *de novo.*  Instead, this court must presume that the state court's adjudication was on the merits and we must apply AEDPA deferential review.  *Jackson v. Smith,* 745 F.3d 206, 210 (6th Cir. 2014) [quoting *Harrington v. Richter,*  562 U.S. 86, 99 (2011)].  This court's "task is to determine what arguments or theories supported the state court decision or could have supported it; and then to determine whether fair-minded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of the Supreme Court."  *Davis v. .Carpenter,* 798 F.3d 468, 475 (6th Cir. 2015), quoting *Harrington*, 562 U.S. at 102.   Because the Ohio Court of Appeals did not misapply a state procedural bar to Nicholson's claim, this Court is not permitted to review, *de novo,* his claim of ineffective assistance of appellant counsel.

### 2.  Text Messages

Nicholson contends that his appellate counsel was ineffective for failing to argue that the admission of text messages at his trial violated his Confrontation Clause rights as explained in *Crawford, supra,* and *Melendez-Diaz v. Massachusetts,* 557 U.S. 305, 129 S. Ct. 2527, 174 L. Ed. 2d 314 (2009).  In *Crawford,* the Court held that the Confrontation Clause contemplates that reliability of witness statements should be tested by cross-examination. *Crawford,* 541 U.S. at syllabus.  In *Melendez-Diaz,* the Court held that admitting certificates prepared for trial by analysts who did not testify at trial violated petitioner's *Sixth Amendment* right to be confronted with witnesses against him.  *Melendez-Diaz,* 557 U.S. at syllabus.  Nicholson likens his text messages to the affidavits prepared by analysts in *Melendez-Diaz* and argues that they should not have been admitted at trial.

Nicholson's argument fails for several reasons.  His text messages were not prepared for trial by someone who did not appear at trial.  They were Nicholson's text messages on a phone that police obtained upon his arrest and upon conducting an inventory search of the car he was driving.  The detective obtained a search warrant before reading the texts.  ECF Doc. 8-3 at 238. Nicholson had the opportunity to confront the detective and to challenge his translation of the texts on Nicholson's phone.  However, Nicholson did not object to Detective Bays reading the text messages at trial.  ECF Doc. 8-3 at 239-283.  Nor did he argue that the detective's translations were incorrect.  Thus, *Melendez-Diaz* has little application to the facts of this case.

In *Crawford,* the Supreme Court held that testimonial statements may not be admitted at trial unless the defendant has an opportunity to confront the person who gave the statement.  The Court did not prescribe a detailed definition of the term "testimonial."  Instead, it considered Webster's common definition of the word "testimony" – "[a] solemn declaration or affirmation made for the purpose of establishing or proving some fact."  Then, the Court listed examples of evidence that would be considered "testimonial" statements – affidavits, custodial examinations, prior testimony that a defendant would be unable to cross-examine, pretrial statements that declarants would reasonably expect to be used prosecutarially, depositions, prior testimony or confessions, and, in some instances, statements taken by police officers during interrogations. *Crawford,* 541 U.S. at 52-53.  In contrast, the Court concluded that casual remarks to an acquaintance, business records and statements made in furtherance of a conspiracy would not qualify as testimonial statements protected by the *Sixth Amendment*.  *Crawford,* 541 U.S. at 51-55.  Here, the texts were not testimonial statements.  They were more like casual remarks made between the defendants and their acquaintances.  They were not statements prepared to prove some fact.

Two central questions assist in determining whether testimonial statements of witnesses may be admitted at trial: 1) was the witness unavailable to testify at trial; and 2) did the defendant have a prior opportunity to cross examine?  *Crawford,* 541 U.S at 59.  Here, the witness was not unavailable.  Whether the witness was Nicholson or, as Nicholson suggests - Detective Bays[4], both were available at trial.  And, Nicholson had an opportunity to cross-examine Detective Bays.  Nicholson's texts were not testimonial statements and their admission at trial did not run afoul of the Confrontation Clause or the Supreme Court's holding in *Crawford.*

Moreover, the admission of Nicholson's text messages did not violate the hearsay rule because they were not offered to prove the truth of the matter asserted in the text messages.  The second prong of the *Crawford* analysis requires the court to determine whether the statement was hearsay.  *U.S. v. Pugh,* 405 F.3d 390, 400 (6th Cir. 2005).  Here, the texts were from various individuals seeking drugs.  Warden Gray argues that they were not offered for the truth of the matter asserted.  Warden Gray contends that text messages from people communicating with Nicholson were offered to explain defendant's activities and give context to his responsive texts, not to prove the matter asserted (that the people actually wanted drugs).  And he argues that Nicholson's own out of court statements were not hearsay because they were Nicholson's admissions.  ECF Doc. 8 at 18-19.  Here is an example of one of the texts that Detective Brays read during the trial:

A.   Got new in better.  Got a new product in, it's better.  Reply:  On my way.
Yep.

---

[4] Nicholson argues that Detective Bays' translation of his text messages made them testimonial.  ECF Doc. 10 at 7.

ECF Doc. 8-3 at 242.  By the time Detective Brays first saw the text messages, he had already

arrested Nicholson and had obtained a search warrant for the phones.  Detective Brays explained

why certain texts in Nicholson's phone confirmed his belief that Nicholson was selling drugs.

The text stated above was not offered to show that Nicholson got new product or sold to a certain

individual.  Rather, it was offered to show that Detective Brays' investigation uncovered

evidence on the cell phones.  The admission of the text messages did not violate the hearsay rule.

There is yet another obstacle to Nicholson's Ground One claim related to the text

messages - trial counsel did not object to their admission at trial.  For this reason, any challenge

that state *appellate* counsel could have raised regarding the admission of the text messages

would likely have been waived.  Under Ohio's contemporaneous objection rule, any error not

objected to at trial is waived absent plain error.  *State v. Brown,* 38 Ohio St.3d 305, 312, 528

N.E.2d 523, 534 (1988).

In overruling Nicholson's App. R. 26(B) application, the Ohio Court of Appeals applied

*Strickland v. Washington* to Nicholson's Ground One claim.  The *Sixth Amendment* guarantees

that in all criminal prosecutions the accused shall enjoy the right to assistance of counsel for his

defense.  In *Strickland v. Washington*, 466 U.S. 668, 686, 104 S. Ct. 2052, 80 L. Ed. 2d 674

(1984), the Supreme Court established the benchmark for evaluating a claim of ineffective

assistance of counsel.  *Id.*  First, the defendant must show that the performance of his or her

attorney was deficient, or objectively unreasonable, in light of the then prevailing professional

norms.  *Hodges v. Colson,* 727 F.3d 517, 545 (6th Cir. 2013), cert denied, 135 S. Ct. 1545, 191

L. Ed. 2d 642 (2015).  Put differently, an attorney's performance will be found deficient if

"counsel made errors so serious that counsel was not functioning as the counsel guaranteed the

defendant by the *Sixth Amendment*."  *Strickland*, 466 U.S. at 687. *See Howard v. United States*, 743 F.3d 459, 464 (6thCir. 2014)(*discussing Strickland*).

Under *Strickland's* second prong, the defendant must show that his attorney's deficient performance prejudiced the defense.  *Id.*  Specifically, the petitioner must show that "a reasonable probability existed that but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. *See also, Wong v. Belmontes*, 558 U.S. 15, 27, 130 S. Ct. 383, 175 L. Ed. 2d 328 (2009) (per curiam) ("But *Strickland* does not require the State to 'rule out' "a more favorable outcome to prevail."  Rather, *Strickland* places the burden on the defendant, not the State, to show a 'reasonable probability' that the result would have been different"), reh'g denied, 558 U.S. 1138, 130 S. Ct. 1122, 175 L. Ed. 2d 931 (2010).

*Strickland* defined a "reasonable probability" in that context to be an error sufficient to undermine the court's confidence in the outcome of the proceedings.  *Id.*  In the words of *Strickland*, "the benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the [proceeding] cannot be relied on as having produced a just result."  *Strickland*, 466 U.S. at 686; *Bigelow v. Haviland,* 576 F.3d 284, 287 (6th Cir. 2009) ("To prevail on an ineffective-assistance claim under the *Sixth Amendment*, a plaintiff must show that his counsel's performance was constitutionally deficient and that it prejudiced him 'render[ing] the trial unfair and the result unreliable.'") (citing *Hall v. Vasbinder*, 563 F.3d 222, 237 (6th Cir. 2009)).

*Strickland* requires the evaluating court to be highly deferential in its scrutiny of counsel's performance.  *Strickland*, 466 U.S. at 689.  In fact, *Strickland* cautions that "the court should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment."  *Id.* at 690;

16

*Stumpf v. Robinson*, 722 F.3d 739, 753 (6th Cir. 2013), cert denied, 571 U.S. 1133, 134 S. Ct. 905, 187 L. Ed. 2d 789 (2014) (discussing deference under *Strickland*).  Review of an attorney's performance, therefore, should not be made from the perspective of hindsight, but instead should evaluate the objective reasonableness of the challenged attorney's performance in the circumstances as they existed at the time of the alleged error.  *Hanna v. Ishee,* 694 F.3d 596, 612 (6th Cir. 2012).

The *Strickland* standard is also used to determine the adequacy of counsel on direct appeal.  *Cleveland v. Bradshaw*, 65 F. Supp. 3d 499, 541 (N.D. Ohio 2014) ("Claims of ineffective assistance of appellate counsel are reviewed under *Strickland's* two-prong test.") (citing *Smith v. Robbins,* 528 U.S. 259, 285, 120 S. Ct. 746, 145 L. Ed. 2d 756 (2000)).  As *Mapes v. Tate,* 388 F.3d 187, 191 (6th Cir. 2004) explained, "To establish ineffective assistance of counsel, it must be shown that counsel's performance was deficient and that the deficient performance prejudiced the defense so as to render the trial unfair the outcome unreliable." *Id.* (citing *Strickland*, 466 U.S. at 687).

Appellate counsel does not render ineffective assistance by choosing to omit non-frivolous issues.  *Jones v. Barnes*, 463 U.S. 745, 103 S. Ct. 3308, 77 L. Ed. 2d 987 (1983); *Williams v. Bagley*, 380 F.3d 932, 970 (6th Cir.2004); *Monzo v. Edwards,* 281 F.3d 568, 579 (6th Cir. 2002).  Ordinarily, the presumption that counsel has rendered effective assistance on appeal will be overcome only if the omitted issue was clearly stronger than the issues presented – the claim Nicholson asserts here.  *Smith v. Robbins*, 528 U.S. 259, 288, 120 S. Ct. 746, 145 L. Ed. 2d 756 (2000); *Hoffner v. Bradshaw*, 622 F.3d 487, 505 (6th Cir. 2010), cert denied, 563 U.S. 947, 131 S. Ct.2117, 179 L. Ed. 2d 910 (2011).  The task of winnowing out less persuasive arguments on appeal is otherwise the hallmark of an effective appellate advocate.  *Smith v. Murray,* 477

17

U.S. 527, 536, 106 S. Ct. 2661, 91 L. Ed. 2d 434 (1986) (quoting *Barnes*, 463 U.S. at 751-752).

Accordingly, strategic and tactical choices regarding what issues to raise on appeal are properly

left to the sound judgment of counsel.  *See United States v. Perry,* 908 F.2d 56, 59 (6th

Cir.1990); *Burger v. Prelesnik,* 826 F. Supp. 2d 997, 1011 (E.D. Mich. 2011) (same), *aff'd,*

*Burger v Woods,* 515 Fed. Appx 507 (6th Cir. Feb. 20, 2013).

     As noted above, the Ohio Court of Appeals provided little analysis in denying

Nicholson's 26(B) application.  The court simply stated that it found Nicholson's arguments to

be unpersuasive and found no genuine issue existed as to whether Nicholson was denied

effective assistance of counsel on appeal.  ECF Doc. 8-1 at 248.   A more thorough analysis

would have returned the same result.

     Nicholson's Rule 26(B) application made the same claim he now advances: that appellate

counsel was ineffective for failing to challenge the trial court's admission of text messages.  But

Nicholson is unable to show that his appellate counsel's performance was deficient or

objectively unreasonable.  Because trial counsel did not contemporaneously object to the

admission of the evidence, the direct appeal could only have sought plain error review.

Moreover, even if trial counsel *had* objected, the trial court could have overruled the objection

on the bases discussed above: no *Sixth Amendment* violation occurred because the text messages

were non-testimonial and were able to be admitted as non-hearsay (Nicholson's statements) or

because they were not being offered for the truth of the matters asserted (the statements by drug

seekers).  There was no error, plain or otherwise, in the admission of the text message evidence.

Nicholson has not shown that his appellate counsel's performance was deficient or objectively

unreasonable.  Nor has he shown that he was prejudiced by appellate counsel's failure to raise

this issue on appeal.  He has not shown that the outcome of his appeal would have been any different.  In fact, it is likely that the outcome of his appeal would have been the same.

Nicholson argues that several of the factors listed in *Mapes v. Tate,* 388 F.3d 187, 191 (6th Cir. 2004) – which are used to evaluate whether an attorney has satisfied the objective standard or reasonableness on direct appeal – can be seen in this case.  Such factors include whether: (1) the omitted issue was significant and obvious; (2) there existed contrary authority to the defendant's position on the omitted issue; (3) the omitted issue was clearly stronger than the issues presented on direct appeal; (4) the omitted issue was raised at the trial level; (5) the ruling of the trial court, if any, on the omitted issue, was subject to deference on appeal; (6) appellate counsel testified in a collateral proceeding as to his appeal strategy; (7) appellate counsel's level of expertise and experience was sufficient; (8) appellate counsel and the petitioner conferred about possible issues for appeal; (9) evidence indicated that counsel reviewed all of the material facts and issues; (10) the omitted issue dealt with another assignment of error; and (11) the decision to omit the issue was an unreasonable one that only an incompetent attorney would make.  *Id.* at 191.  Although Nicholson argues that failing to appeal the admission of the text messages "fits several prongs" of the *Mapes* analysis, (ECF Doc. 10 at 6-7) he never developed the argument other than making the conclusory statement that the issues raised in his 26(B) application were clearly stronger than the issues raised in his direct appeal.  However, as already explained, Nicholson's Ground One claim would have likely failed on direct appeal, partly because the answer to question 4) from the *Mapes* factors, is "no."  The omitted issue was *not* raised at the trial level and would have likely been considered waived by the court of appeals.  It was not clearly stronger than the issue presented on direct appeal.

The Ohio Court of Appeals' decision – rejecting Nicholson's argument that his appellate counsel provided ineffective assistance by failing to argue that the trial court abused its discretion by admitting text messages – is entitled to AEDPA deference.  Under AEDPA's deferential standard of review, the Ohio Court of Appeals' decision to reject Nicholson's ineffective assistance of appellate counsel claim cannot be overturned because it was neither contrary to nor involved an unreasonable application of the clearly established federal law announced in *Strickland v. Washington*.  Nor was the Ohio Court of Appeals' decision based on an unreasonable determination of the facts considering the evidence presented in the state court proceeding.

### 3.    Mistrial Transcript

Nicholson's Ground One claim also argues that appellate counsel was deficient for failing to order the transcripts of the prior mistrial.  ECF Doc. 1 at 5; ECF Doc. 10 at 12-14.  Nicholson raised this issue in his Rule 26(B) application to reopen his direct appeal.  He argues that the Ohio Court of Appeals misapplied *Britt v. North Carolina,* 404 U.S. 226, 92 S. Ct. 431, 30 L. Ed. 2d 400 (1971).  Nicholson asserts that he could not demonstrate on direct appeal that the trial court erred in the admission of evidence in his second trial because his appellate attorney never obtained the transcript of his mistrial (during which the trial court found certain evidence offered by the state to be sufficiently prejudicial to justify a mistrial; Nicholson asserts that the trial court admitted that very evidence in his second trial[5]).  And he contends the trial court violated his rights by denying his request for the transcript of the mistrial, which would have allowed him to pursue a winning direct appeal.

---

[5]  Although Nicholson never specifically describes the evidence that he claims was wrongly admitted at his second trial, he generally states that he needed the mistrial transcript to challenge whether the police had probable cause to enter his residence.

In *Britt,* the U.S. Supreme Court held that a defendant who claims the right to a free transcript does not, under Supreme Court precedent, bear the burden of proving that other alternatives to a transcript were inadequate.  The court also recognized the inherent value to a defendant of a transcript of prior mistrial proceedings.  *Id.* at 228.  "[I]t can ordinarily be assumed that a transcript of a prior mistrial would be valuable to the defendant in at least two ways: as a discovery device in preparation for trial, and as a tool at the trial itself for the impeachment of witnesses."  *Id.*  *Britt* involved the denial of a mistrial transcript to a defendant. It did not involve a claim of ineffective assistance of appellate counsel for failure to order a mistrial transcript.  Thus, *Britt* does not directly apply to Nicholson's Ground One claim.

The issue in Nicholson's Ground One claim is whether appellate counsel was ineffective for failing to order the mistrial transcript, not whether Nicholson was entitled to the transcript. The applicable law for ineffective assistance of appellate counsel has already been explained above.  In the context of an IAAC claim, Nicholson must show that his appellate counsel's performance was deficient and/or objectively unreasonable and that he was prejudiced by the ineffective assistance.  *Strickland*, 466 U.S. at 687, 694.

In *Britt,* the Supreme Court recognized that there was value to a mistrial transcript and stated two reasons why the transcript might be helpful – as a discovery device in preparation for trial, and as a tool at the trial itself for the impeachment of prosecution witnesses.  *Britt,* 404 U.S. at 228.  This list was not exhaustive, and the mistrial transcript may have been helpful in preparing the appeal.  But in considering this aspect of Nicholson's Ground One claim, this court is not evaluating whether the transcript may have been helpful.  This court is evaluating whether appellate counsel's failure to order it was deficient and/or objectively unreasonable.  On the record before us, we cannot say that it was.  Appellate counsel was not required to raise every

21

possible issue on appeal.   Appellate counsel had some discretion to make strategic choices about the issues he would raise on appeal without his effectiveness being second-guessed.  *See United States v. Perry,* 908 F.2d 56, 59.

*Britt* stands for the proposition that Nicholson should not be required to fully explain why he needed the mistrial transcript.  However, it does not excuse him from explaining how his appellate counsel's failure to order the transcript was deficient and prejudiced his appeal.  "Nicholson asserts that he was unable to challenge how the police had probable cause to enter his residence.  Without the mistrial transcript, Nicholson was unable to successfully challenge his appeal."  ECF Doc. 10 at 13.  Even if this were true, the timing of events does not support this part of Nicholson's Ground One claim.

On April 28, 2017, Nicholson moved for a copy of the mistrial transcript arguing he needed it on direct appeal.  ECF Doc. 8-1 at 152.  But by then, his appeal had been fully briefed, the oral argument had been waived, and the case had been taken under advisement by the court of appeals.  ECF Doc. 8-1 at 185.  Nicholson was present when the trial court declared a mistrial and he could explain why the transcript would have assisted him on appeal.   However, he has not done so.  Absent such an explanation, this court cannot find that the Ohio Court of Appeals' decision was contrary to Supreme Court precedent.

The trial court declared a mistrial at Nicholson's first trial because one of the state's witnesses violated a ruling on a motion *in limine.*  ECF Doc. 8-1 at 35.  This mistrial information could have possibly assisted Nicholson's trial counsel in preparing for the second trial or in cross-examining the state's witness.  But it is difficult to conceive how the mistrial transcript

would have assisted Nicholson in challenging whether the police had probable cause to enter his residence.  Nicholson's filings do not explain this.[6]

Nicholson cites *Britt v. North Carolina,* which seems applicable here because Nicholson was denied a mistrial transcript.  But as already explained, *Britt* does not apply to Nicholson's argument that appellate counsel did something wrong by not requesting the mistrial transcript. Nicholson fails to show that his appellate counsel's failure to request the mistrial transcript was deficient or objectively unreasonable.  Nor has he met the *Strickland* prejudice prong by showing that the outcome of his appeal would have been different if the mistrial transcript had been requested.  The Ohio Court of Appeals decision did not misapply *Strickland*.

I cannot find that the state court decisions regarding Nicholson's appellate counsel were contrary to or an unreasonable application of clearly established federal law.  There was no misapplication of Supreme Court precedent.  I recommend that Nicholson's Ground One claim be dismissed for lack of merit.

### B.      Ground Two

Nicholson's Ground Two claim asserts that his right to an effective appeal was denied by the trial court's denial of his request for a mistrial transcript.  ECF Doc. 1 at 7.  Nicholson filed a post-conviction motion requesting his mistrial transcript.  ECF Doc. 8-1 at 152.  When the trial court denied his motion, he appealed the decision to the Ohio Court of Appeals.  ECF Doc. 8-1 at 157.  However, after the Ohio Court of Appeals affirmed the trial court's decision, Nicholson did not appeal to the Ohio Supreme Court.  ECF Doc. 8-1 at 186; ECF Doc. 10 at 3-4.  As a result,

---

[6] In the supporting facts to his Ground Two claim, Nicholson states that the trial court allowed the same evidence, which caused his mistrial, into his trial causing his second trial to be fundamentally unfair. ECF Doc. 1 at 7.  Even if true, this would not explain why he needed the mistrial transcript to argue that the evidence should not have been admitted and his trial was fundamentally unfair.  If evidence should not have been admitted, nothing prevented Nicholson from raising that argument on appeal.  In other words, he would not have needed the mistrial transcript to raise that argument.

Warden Gray argues that Nicholson's Ground Two claim is procedurally defaulted (ECF Doc. 8 at 15-16), and Nicholson concedes that he did not exhaust this claim.  ECF Doc. 10 at 3-4. Because the parties agree that this claim was not exhausted, I include a relatively brief discussion of the doctrine of procedural default.

Before a federal court can review a state prisoner's habeas petition, AEDPA requires that the state prisoner exhaust all available state remedies.  28 U.S.C. 2254(b), (c); *see also Rose v. Lundy*, 455 U.S. 509 (1982).  To exhaust available remedies, the state prisoner must give state courts "one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process."  *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999); *see also Manning v. Alexander*, 912 F.2d 878, 881 (6th Cir. 1990) ("[T]he highest court in the state in which the petitioner was convicted [must have] been given a full and fair opportunity to rule on the petitioner's claims.").  The exhaustion requirement "refers only to remedies still available at the time of the federal petition."  *Engle v. Isaac*, 456 U.S. 107, 125 n.28 (1982); *see also Woodford v. Ngo*, 548 U.S. 81, 92-93 (2006) ("[S]tate-court remedies are . . . 'exhausted' when they are no longer available, regardless of the reason for their unavailability.").  It "does not require pursuit of a state remedy [when] such a pursuit is clearly futile."  *Wiley v. Sowders*, 647 F.2d 642, 647 (6th Cir. 1981).  If the highest court in a state has not reviewed the petitioner's federal constitutional claims, then federal courts may not review them either, except under strictly limited circumstances.

Nicholson concedes that he did not appeal his Ground Two claim to the Ohio Supreme Court.[7]  ECF Doc. 10 at 3-4.  Nicholson cannot file a delayed appeal with the Ohio Supreme Court on this issue because it was only raised in a post-conviction proceeding.  See Ohio S. Ct.

---

[7] He argues only that his Ground One claim is not procedurally defaulted.  ECF Doc. 10 at 4.

Prac. R. 7.01(A)(4)(c).  Nicholson procedurally defaulted his Ground Two claim by failing to exhaust this claim in the Ohio courts and because and no state court remedies remain.

Nicholson could overcome his procedural default by showing "cause for not following the procedural rule and that failure to review the claim would result in prejudice or a miscarriage of justice." *Williams v. Coyle*, 260 F.3d 684, 693 (6th Cir. 2001).  However, Nicholson has not argued that there was any cause to excuse his procedural default.  ECF Doc. 10 at 4.  And, absent a showing of cause, this court is not obligated to assess whether he suffered any prejudice.

This court could also excuse Nicholson's procedural default of his Ground Two claim if he demonstrated that he was actually innocent.  *Coleman v. Thompson,* 501 U.S. 722, 748, 111 S. Ct. 2546, 115 L. Ed. 2d 640 (1991).  *See also Murray v. Carrier,* 477 U.S. 478, 496, 91 L. Ed. 2d 397, 106 S. Ct. 2639 (1986) ("Where a constitutional violation has probably resulted in the conviction of one who is actually innocent, a federal habeas court may grant the writ even in the absence of a showing of cause for the procedural default").  But Nicholson does not argue that he was factually innocent of the charges on which he was convicted, and he has not submitted any new evidence that would support such an argument.  Because Nicholson failed to exhaust his Ground Two claim and is no longer able to do so, I recommend that his Ground Two claim be dismissed as procedurally defaulted.[8]

---

[8] Even if the Ground Two claim had not been procedurally defaulted, it would fail on the merits. Nicholson cannot show that the trial court or the Ohio Court of Appeals misapplied clearly established federal law in denying him a copy of the transcript of his mistrial.  This is because he apparently never sought the transcript before or while the case was being tried a second time or at any time before his direct appeal was fully briefed and submitted.  And he has not articulated how exactly the content of that transcript would have benefitted his direct appeal.  As such, he cannot demonstrate any prejudice from the alleged violation of the rights he claims under *Britt*, as the Ohio Court of Appeals found.  ECF Doc. 8-1 at 185.

## VI.    Certificate of Appealability

### A.    Legal Standard

A habeas petitioner may not appeal the denial of his application for a writ of habeas corpus unless a judge issues a certificate of appealability and specifies the issues that can be raised on appeal.  28 U.S.C. § 2253(c).  "A certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  The Supreme Court has interpreted this standard to mean that the "'petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong.'"  *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).  The granting of a certificate of appealability does not require a showing that the appeal would succeed on any claim.  *Miller-El v. Cockrell*, 537 U.S. 322, 337 (2003).

### B.    Analysis

When a petition is to be dismissed on a procedural basis, the inquiry under § 2253(c) is two-fold.  In such cases, a certificate of appealability "should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling."  *Slack*, 529 U.S. at 485.  As the Supreme Court explained, "[w]here a plain procedural bar is present and the district court is correct to invoke it to dispose of the case, a reasonable jurist could not conclude either that the district court erred in dismissing the petition or that the petitioner should be allowed to proceed further. In such a circumstance, no appeal would be warranted."  *Id.* at 486.  If the Court accepts my recommendations, Nicholson will not be able to show that the Court's rulings on his

26

procedurally defaulted and meritless claims are debatable.  Thus, I recommend that a certificate of appealability not be issued.

## VII.    Recommendations

Because Nicholson's Ground One claim lacks merit and his Ground Two claim was procedurally defaulted, I recommend that the Court DISMISS Nicholson's claims and DENY his petition for writ of habeas corpus under 28 U.S.C. § 2254.  I further recommend that he not be granted a certificate of appealability.

Dated: September 17, 2019

Thomas M. Parker
United States Magistrate Judge

---

## OBJECTIONS

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after being served with a copy of this document.  Failure to file objections within the specified time may waive the right to appeal the District Court's order.  See *U.S. v. Walters*, 638 F.2d 947 (6th Cir. 1981).  See also *Thomas v. Arn*, 474 U.S. 140 (1985), reh'g denied, 474 U.S. 1111 (1986).